Nima Darouian (CA Bar No. 271367)
darouiann@ballardspahr.com
Nalee Xiong (CA Bar No. 334816)
xiongn@ballardspahr.com
**BALLARD SPAHR LLP**
2029 Century Park East, Suite 1400
Los Angeles, CA 90067-2915
Telephone: 424.204.4400
Facsimile: 424.204.4350

Attorneys for Defendant
CSL PLASMA INC.

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ARTURO JACOB, on behalf of himself and all others similarly situated and aggrieved,<br><br>Plaintiff,<br><br>v.<br><br>CSL PLASMA INC., a Delaware Corporation; and DOES 1 Through 10, inclusive,<br><br>Defendant. | CASE NO. '24CV1807 H   DEB<br><br>**NOTICE OF REMOVAL OF ACTION TO THE UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF CALIFORNIA PURSUANT TO 28 U.S.C. §§ 1332, 1441, 1446, AND 1453** |

**TO THE HONORABLE CLERK OF THE UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF CALIFORNIA:**

**PLEASE TAKE NOTICE** that Defendant CSL PLASMA INC. ("CSL Plasma" or "Defendant") hereby invokes this Court's jurisdiction pursuant to 28 U.S.C. §§ 1332, 1441, 1446, and 1453, and removes the above-entitled action to this Court from the Superior Court of the State of California for the County of San Diego.

**SERVICE AND PLEADINGS FILED IN STATE COURT**

1.   On August 16, 2024, Plaintiff Arturo Jacob filed a putative class action and Private Attorneys General Act ("PAGA") representative action complaint ("Complaint") against Defendant in the Superior Court of the State of California for

1 the County of San Diego, entitled *Arturo Jacob, on behalf of himself and all others similarly situated and aggrieved, v. CSL PLASMA INC., a Delaware Corporation; and DOES 1 through 10, inclusive,* Case No. 24CU006340C, alleging ten causes of action: (1) Unlawful Wage Deductions; (2) Failure to Pay Vested Vacation Wages; (3) Failure to Timely Pay Wages Due Upon Separation From Employment; (4) Failure to Provide Accurate Itemized Wage Statements; (5) Violations of the Unfair Competition Law; (6) PAGA Civil Penalties for Unlawful Wage Deductions; (7) PAGA Civil Penalties for Failure to Pay Vested Vacation Wages; (8) PAGA Civil Penalties for Failure to Timely Pay Wages Due Upon Separation From Employment; (9) PAGA Civil Penalties for Failure to Provide Accurate Itemized Wage Statements; and (10) PAGA Civil Penalties for Failure to Maintain Accurate Records.

2. On August 20, 2024, Plaintiff emailed Defendant's counsel with the Summons, Complaint, Notice of Acknowledgement and Receipt, Notice of Case Management Conference, and other related court documents. A true and correct copy of the Summons, Complaint, and other related court documents are attached as **Exhibit A** to the Declaration of Nima Darouian ("Darouian Decl.") filed concurrently with this Notice of Removal. Darouian Decl. ¶ 2.

3. On September 9, 2024, Defendant served Plaintiff with a signed Notice of Acknowledgement and Receipt. A true and correct copy of the signed Notice of Acknowledgement and Receipt is attached as **Exhibit B.** Darouian Decl. ¶ 3.

4. On September 9, 2024, Plaintiff filed its Notice of Appearance of Rosemary C. Khoury and Withdrawal of Marta Manus as counsel for Plaintiff. A true and correct copy of the Notice is attached as **Exhibit C.** Darouian Decl. ¶ 4.

5. On September 9, 2024, Plaintiff filed a Proof of Service of the Summons and Complaint, along with the signed Notice and Acknowledgement of Receipt. A true and correct copy of the Proof of Service and Notice and Acknowledgement of Receipt is attached as **Exhibit D.** Darouian Decl. ¶ 5.

6. **Exhibits A-D** constitute all the pleadings that have been filed and/or

Ballard Spahr LLP
2029 Century Park East, Suite 1400
Los Angeles, CA 90067-2915
Telephone: 424.204.4400

served in this action as of the date of filing this Notice of Removal based on a review of the documents available on the state court's docket.  Darouian Decl. ¶ 6.

## TIMELINESS OF REMOVAL

7. Defendant's removal is timely because it is filed within thirty (30) days of the date in which service of process was completed.  Therefore, it has been filed within the time period mandated by 28 U.S.C. § 1446(b). *Murphy Bros. v. Michetti Pipe Stringing*, 526 U.S. 344, 354 (1999) ("[T]he defendant's period for removal will be no less than 30 days from service, and in some categories, it will be more than 30 days from service, depending on when the complaint is received."); *see also Madren v. Belden, Inc.*, No. 12-CV-01706-RMW, 2012 WL 2572040, at *2 (N.D. Cal. July 2, 2012) ("Formal service of process, measured from the service date according to state law, is a prerequisite for triggering the 30–day removal period because it 'assures defendants adequate time to decide whether to remove an action to federal court.'"); *Varga v. United Airlines*, No. C 09-02278 SI, 2009 WL 2246208, at *3 (N.D. Cal. July 24, 2009) ("[T]he 30–day period for removal began when service of process was complete. Under California law, service was complete on April 22, the date defense counsel signed and returned the notice and acknowledgment of receipt. Defendant removed this case on May 22, 30 days after service was complete. Removal of this action was therefore timely.") (internal citations omitted); *Harper v. Little Caesar Enterprises, Inc.*, 2018 WL 5984841, at *2 (C.D. Cal., Nov. 14, 2018, No. SACV1801564JLSJDE) ("The party being served has twenty days from the date of mailing to return the notice and acknowledgement of receipt to the sender.  Here, Plaintiff mailed the materials on July 17, 2018, and Defendant signed, dated, and returned the notice and acknowledgement of receipt on August 6, 2018 – twenty days later. Thus, Defendant was not formally served until it executed the acknowledgement of receipt on August 6, 2018, and had until September 5, 2018 to remove.") (internal citations omitted); *Langston v. 20/20 Companies, Inc.*, 2014 WL 5335734, at *3 (C.D. Cal., Oct. 17, 2014, No. EDCV 14-1360 JGB SPX) ("[S]ervice was not complete until

Defendant's agent signed the Acknowledgment on June 4, 2014. Defendant filed its Notice of Removal on July 3, 2014, which was twenty-nine days after service was completed on June 4, 2014. Therefore, removal was timely, and the Court DENIES Plaintiff's Motion to Remand."); *Adams v. Grossmont Cuyamaca Cmty. Coll. Dist.*, No. 23-CV-1220-AGS-DDL, 2024 WL 1146642, at *2 (S.D. Cal. Mar. 15, 2024) ("Those notices [of acknowledgement], in turn, stated that 'service of a summons is deemed complete on the day you sign the acknowledgment of receipt below.' So, service here would again be effective on May 31, 2023—the date of signing… In short, the removal was timely.") (internal citations omitted).

## NOTICE TO ALL PARTIES AND STATE COURT

8. In accordance with 28 U.S.C. § 1446(d), the undersigned counsel certifies that a copy of this Notice of Removal and all supporting documents will be promptly served on Plaintiff's counsel and filed with the Clerk of the San Diego County Superior Court. Therefore, all procedural requirements under 28 U.S.C. § 1446 will be satisfied.

## JURISDICTION UNDER THE CLASS ACTION FAIRNESS ACT (CAFA)

9. Section 4 of the Class Action Fairness Act of 2005 (CAFA), 28 U.S.C. § 1332(d)(2) provides, in relevant part:

> The district courts shall have original jurisdiction of any civil action in which the matter in controversy exceeds the sum or value of $5,000,000, exclusive of interest and costs, and is a class action in which – (A) any member of a class of plaintiffs is a citizen of a state different from any defendant.

10. In addition, CAFA confers federal court jurisdiction where the proposed class involves 100 or more members, or where the primary defendants are not States, State officials, or other governmental entities. 28 U.S.C. § 1332(d)(5).

11. As set forth below, this action satisfies all the requirements for federal jurisdiction under CAFA. This action (a) does not involve a defendant who is a governmental official or entity; (b) involves plaintiffs and defendants who are citizens

Ballard Spahr LLP
2029 Century Park East, Suite 1400
Los Angeles, CA 90067-2915
Telephone: 424.204.4400

of different states; (c) involves a putative class of 100 or more purported members; and (d) involves an amount in controversy greater than $5,000,000.

### Defendant Is Not a Governmental Official or Entity

12. Defendant is not a state, a state official, or any other governmental entity.

### Plaintiffs and Defendant Are Citizens of Different States

13. The standard for establishing diversity of citizenship under CAFA is different than diversity jurisdiction under 28 U.S.C. § 1332. CAFA's diversity requirement is satisfied when there is minimal diversity, *i.e.*, when at least one member of a class of plaintiffs is a citizen of a different state from any one defendant. *See* 28 U.S.C. § 1332(d)(2); *United States v. Shell Oil Co.*, 602 F.3d 1087, 1090-91 (9th Cir. 2010) (holding that to "achieve its purposes, CAFA provides expanded original diversity jurisdiction for class actions meeting the minimal diversity requirement set forth in 28 U.S.C. § 1332(d)(2)"); *Bradford v. Bank of Am. Corp.*, No. CV 15-5201-GHK (JCx), 2015 U.S. Dist. LEXIS 120800, at *13 (C.D. Cal. Sep. 10, 2015) ("[defendant] needed only to establish that one plaintiff was a citizen of a different state from any one defendant at the time of removal.").

14. Diversity of citizenship is determined "as of the time the complaint is filed and removal is effected." *Strotek Corp. v. Air Transp. Ass'n of America*, 300 F.3d 1129, 1131 (9th Cir. 2002) (citations omitted).

15. A natural person's citizenship is determined by that person's state of "domicile." *Kanter v. Warner-Lambert Co.*, 265 F.3d 853, 857 (9th Cir. 2001). "A person's domicile is her permanent home, where she resides with the intention to remain or to which she intends to return." *Id.* (citation omitted). A person's intention to remain may be established by their place of employment. *Youn Kyung Park v. Holder*, 572 F.3d 619, 625 (9th Cir. 2009); *see also Francisco v. Emeritus Corp.*, 2017 U.S. Dist. LEXIS 90131, at *10 (C.D. Cal. Jun. 12, 2017) ("Plaintiff's residence and employment in California are sufficient evidence of his intent to remain in California.").

16. On removal, a defendant need only provide "a short and plain statement alleging that [the plaintiff] and the putative class members were citizens of California." *Ehrman v. Cox Communs., Inc.*, 932 F.3d 1223, 1227 (9th Cir. 2019). The defendant does not have to "explain why it believed [plaintiff] or the putative class members were citizens of California … a defendant's allegations of citizenship may be based solely on information and belief." *Id*.

17. Here, the Complaint alleges that Plaintiff Arturo Jacob "is, and at all relevant times, was a resident of San Diego, California, and has been employed by Defendants in San Diego County." *See* Complaint, ¶ 13. Defendant is therefore informed and believes, as alleged by Plaintiff in the Complaint, that Plaintiff, at the time this action was commenced, and still is, a resident and citizen of the State of California within the meaning of 28 U.S.C. § 1332(a).

18. A corporation is a citizen of any state in which it is incorporated and of the state in which it has its principle place of business. 28 U.S.C. § 1332(c). With respect to ascertaining a corporation's principal place of business, the United States Supreme Court has adopted the "nerve center test." *Hertz Corp. v. Friend*, 559 U.S. 77, 80-81 (2010). Under the nerve center test, a corporation's principal place of business is where a corporation's high-level officers direct, control and coordinate the corporation's activities. *Id.* A corporation can only have one "nerve center." *Id.* at 93-94. In evaluating where a corporation's "nerve center" is located, courts will look to the center of overall direction, control, and coordination of the company and will no longer weigh corporate functions, assets, or revenues in each state.

19. At the time Plaintiff filed the Complaint, and presently, Defendant has been a corporation organized under the laws of the State of Delaware. *See* Declaration of Shandalyn Matson ("Matson Decl.") at ¶ 3. At all relevant times, the company headquarters of Defendant, and thus its principal place of business, has been in the State of Florida. *Id.* Defendant's headquarters in Boca Raton, Florida is where the majority of its executive, administrative, financial, and management functions are

Ballard Spahr LLP
2029 Century Park East, Suite 1400
Los Angeles, CA 90067-2915
Telephone: 424.204.4400

DMFIRM #414015612 v1

6
NOTICE OF REMOVAL

conducted, and from where the majority of its high-level officers direct, control, and coordinate the company's operations and activities. *Id.* Most of Defendant's executive officers maintain their offices in the State of Florida. *Id.* Accordingly, for purposes of removal under CAFA, Defendant is either a citizen of the State of Delaware or Florida, and is not a citizen of the State of California.

20. Because at least one member of the class of Plaintiffs is a citizen of a state (California) different from Defendant (Delaware or Florida), minimal diversity exists here. *Bradford*, 2015 U.S. Dist. Lexis 120800, at *13 ("[defendant] needed only to establish that one plaintiff was a citizen of a different state from any one defendant at the time of removal.").

21. The presence of Doe defendants has no bearing on diversity with respect to removal. *See* 28 U.S.C. § 1441(a) ("For purposes of removal under this Chapter, the citizenship of defendants used under a fictitious name shall be disregarded.").

### The Putative Class Consists of More Than 100 Members

22. The Complaint alleges that the putative class is so numerous that joinder of all members would be unfeasible and impractical. Complaint ¶ 33. Plaintiff purports to represent "all Defendants' California-based non-exempt employees at any time during the four years before the filing of this Complaint through the date of trial." Complaint ¶ 24. There are at least 704 individuals that fall within the Plaintiff's putative class definition. Matson Decl. at ¶ 5.

23. Based on the pleadings set forth by Plaintiff and Defendant CSL Plasma's internal employee data, the alleged putative class exceeds 100 members.

### The Purported Amount in Controversy Exceeds $5,000,000

24. CAFA authorizes the removal of class actions in which the amount in controversy exceeds $5,000,000.00 28 U.S.C. §1332(d).

25. When measuring the amount in controversy, the court must assume that the allegations of the complaint are true and that the jury will return a verdict for the plaintiff on all claims made in the complaint. *Kenneth Rothschild Trust v. Morgan*

*Stanley Dean Witter*, 199 F.Supp.2d 992, 1001 (C.D. Cal. 2002).

26. In *Dart Cherokee Basin Operating Company, LLC v. Owens*, 135 S.Ct. 547 (2014), the United States Supreme Court held that "a defendant's notice of removal need include only a plausible allegation that the amount in controversy exceeds the jurisdictional threshold." *Id.* at 554 (emphasis added). Plaintiffs may not avoid removal to federal court under CAFA's $5,000,000 amount in controversy requirement by expressly alleging or subsequently stipulating that damages fall below that sum. *See Standard Fire Ins. Co. v. Knowles*, 133 S.Ct. 1345, 1347 (2013). Because Plaintiffs have not expressly pled a specific amount of damages, a removing party need only show that it is more likely than not that the amount in controversy exceeds $5,000,000. *See Singer v. State Farm Mut. Auto. Ins. Co.*, 116 F.3d 373, 376 (9th Cir. 1997).

27. Notably, "[t]here is no obligation by defendant to support removal with production of extensive business records to prove or disprove liability and/or damages with respect to plaintiff or the putative class members at this premature (pre-certification) stage of the litigation." *Muniz v. Pilot Travel Ctrs. LLC*, No. CIV. S-07-0325 FCD EFB, 2007 U.S. Dist. LEXIS 31515, at *15 (E.D. Cal. Apr. 30, 2007). Rather, a defendant seeking removal must prove by a preponderance of the evidence that the aggregate amount in controversy exceeds the jurisdictional minimum. *Jauregui v. Roadrunner Transp. Servs.*, 28 F.4th 989, 993-94 (9th Cir. 2022) (finding that the district court erred in imposing – both explicitly and in its analysis – a presumption against CAFA jurisdiction, and holding instead that the defendant was only required to show the amount in controversy by a preponderance of evidence); *Arias v. Residence Inn*, 936 F.3d 920, 922, 925 (9th Cir. 2019) (the removing defendant may rely on reasonable assumptions in estimating the amount in controversy, which "need not be proven"); *Rodriguez v. AT&T Mobility Servs. Ltd. Liab. Co.*, 728 F.3d 975, 977 (9th Cir. 2013) ("the proper burden of proof imposed upon a defendant to establish the amount in controversy is the preponderance of the

evidence standard"); see *Lewis v. Verizon Commc'ns, Inc.*, 627 F.3d 395, 400 (9th Cir. 2010) ("The amount in controversy is simply an estimate of the total amount in dispute, not a prospective assessment of defendant's liability."). "[T]his rule is not altered even if plaintiffs affirmatively contend in their complaint that damages do not exceed $5 million." *Ibarra v. Manheim Invs., Inc.*, 775 F.3d 1193, 1197 (9th Cir. 2015) (citing *Standard Fire Insurance Co. v. Knowles*, 568 U.S. 588, 594-96 (2013)). "The Supreme Court has held that when a class-action plaintiff stipulates, prior to certification of the class, that he, and the class he seeks to represent, will not seek damages that exceed $5 million in total, the district court should ignore that stipulation when assessing the amount in controversy. This is so because although individual plaintiffs are the masters of their complaints and may stipulate to amounts at issue that fall below the federal jurisdictional requirement, the same is not true for a putative class representative, who cannot yet bind the absent class." *Arias*, 936 F.3d at 928-29 (citing *Standard Fire Insurance Co.*, 568 U.S. at 595-96 (internal quotations and citations omitted)).

28. Moreover, if a plaintiff asserts statutory violations, the court must assume that the violation rate is 100% unless the plaintiff specifically alleges otherwise. See *Muniz*, 2007 U.S. Dist. LEXIS 31515, at *12-13 ("As these allegations reveal, plaintiff includes no fact-specific allegations that would result in a putative class or violation rate that is discernibly smaller than 100%, used by defendant in its calculations. Plaintiff is the 'master of [her] claim[s],' and if she wanted to avoid removal, she could have alleged facts specific to her claims which would narrow the scope of the putative class or the damages sought.") (citing *Caterpillar, Inc. v. Williams*, 482 U.S. 386, 392 (1987)); *see also Arreola v. The Finish Line*, No. 14-CV-03339-LHK, 2014 U.S. Dist. LEXIS 170464, at *12 (N.D. Cal. Dec. 9, 2014) ("District courts in the Ninth Circuit have permitted a defendant removing an action under CAFA to make assumptions when calculating the amount in controversy—such as assuming a 100 percent violation rate, or assuming that each member of the class

will have experienced some type of violation—when those assumptions are reasonable in light of the allegations in the complaint."); *Coleman v. Estes Express Lines, Inc.*, 730 F. Supp. 2d 1141, 1149 (C.D. Cal. 2010) ("[C]ourts have assumed a 100% violation rate in calculating the amount in controversy when the complaint does not allege a more precise calculation.").

29. Plaintiff alleges that he seeks to represent and certify a Class that is defined as follows: "All Defendants' California-based non-exempt employees at any time during the four years before the filing of this Complaint through the date of trial." *See* Complaint, ¶ 24.

30. Based on a review of Defendant's personnel and payroll records, there are at least 704 persons that fit Plaintiff's class definition for the relevant class time period (August 16, 2020 to present). Matson Decl. at ¶ 5.

31. Plaintiff does not allege a specific amount in damages for the class he purports to represent, but indicates that they seek damages in excess of thirty-five thousand dollars ($35,000). *See* Plaintiff's Civil Cover Sheet. Thus, the amount in controversy, as pled by Plaintiff, is at least $35,000 per plaintiff, or at least $24,640,000 ($35,000 x 704 putative class members). Matson Decl. at ¶ 5; *see also Abrego v. The Dow Chem. Co.*, 443 F.3d 676, 689 (9th Cir. 2006) (finding jurisdictional amount met where complaint sought no specific amount in damages, but pled the amount in controversy to exceed $25,000 and there were 1,160 class members). For this reason alone, CAFA's amount in controversy requirement is satisfied.

32. Without admitting that Plaintiff could recover or is entitled to any damages individually, let alone on a class wide basis, Defendant has a good-faith belief that Plaintiff's sought-after relief places the amount in controversy in this action in excess of $5,000,000, exclusive of interest and costs.

### 1. Alleged Unpaid Vacation Wages

33. Plaintiff alleges that he seeks to certify a subclass of employees defined

as "Vacation Wages Subclass," which consists of "[a]ll members of the Class who earned vacation wages and were not paid all vested vacation wages." Complaint ¶ 26. Plaintiff further alleges that on behalf of "Plaintiff [sic] each Member of the Vacation Wages Subclass," Plaintiff brings a cause of action for Failure to Pay Vested Vacation Wages. *Id.* at ¶¶ 42-46.

34. Plaintiff alleges that "Defendants failed to pay all accrued vacation wages earned and vested to employees upon termination of their employment, in violation of Labor Code section 227.3." *Id.* at ¶ 44.

35. Plaintiff's Complaint does not specify an alleged amount of unpaid vested vacation wages, but states that Plaintiff and the putative class members "accrued vacation wages on the total hours worked." *Id.* As such, Defendant may use reasonable assumptions in calculating the amount in controversy for purposes of amount in controversy for purposes of removal. *Lucas v. Michael Kors (USA) Inc.*, No. CV 18-1608-MWF (MRWx) 2018 U.S. Dist. LEXIS 78510, at *8 (C.D. Cal. May 9, 2018).

36. From August 16, 2021 to present, approximately 364 non-exempt employees within California terminated their employment with Defendant. Matson Decl. at ¶ 6. The average hourly rate at the time of termination for these 364 employees was approximately $27.94. *Id.*

37. Assuming that each of these 364 non-exempt employees did not receive 5 days, or 40 hours, of their vested vacation, the potential exposure as to the claim for alleged unpaid vacation wages is approximately **$406,806.40** (364 employees x 27.94 average hourly rate x 40 hours of accrued vacation time).

### 2. Alleged Untimely Final Wages

38. Plaintiff alleges that he seeks to certify a subclass of employees defined as "Waiting Time Subclass," which consists of "[a]ll members of the Class whose employment ended any time during the three years preceding the filing of this Complaint." Complaint ¶ 27. Plaintiff further alleges that on behalf of Plaintiff and

"each Member of the Waiting Time Subclass," Plaintiff brings a cause of action for Failure to Timely Pay Wages Due Upon Separation. *Id.* at ¶¶ 47-52.

39. Plaintiff alleges that because of Defendant's "policy," Defendant "failed to pay all Plaitniff [sic] and Class Members all wages that were due and owing to them." *Id.* at ¶ 49. Plaintiff therefore "seeks to recover in a civil action all remedies to the fullest extent permissible including those permitted pursuant to Labor Code section 203 and Code of Civil Procedure 1021.5." *Id.* at ¶ 52.

40. Under Labor Code section 203, an employee who is not timely paid all wages due upon termination may recover a penalty equal to the employee's daily rate of pay for each day the wages were improperly withheld, for up to 30 days. *See* Cal. Lab. Code § 203.

41. Courts in this circuit have found that a 100% violation rate for waiting time penalties can be a reasonable assumption. *See, e.g., Chavez*, 2019 WL 1501576, at *4 ("By tying the unpaid final wage claim to his other claims, [plaintiff] makes [defendant's] assumption of 100% violation for unpaid wages reasonable—that is, if every putative class member incurred damages for at least one other claim in the complaint, every class member who departed [defendant] during the statutory period was due unpaid wages."); *Mejia v. DHL Express (USA), Inc.,* No. CV 15-890-GHL JCX, 2015 WL 2452755, at *4 (C.D. Cal. May 21, 2015) approving of an assumed 100% violation rate where plaintiff alleged defendant maintained uniform policies and practices and procedures).

42. Based on Defendant's payroll and personnel records, approximately 364 non-exempt employees within California terminated their employment with Defendant within the relevant three-year statute of limitations period (August 16, 2021 to present). Matson Decl. at ¶ 6. The average hourly rate for a putative class member during this three-year period is approximately $27.94. *Id.* Accordingly, given this number of employees, with the assumption that Plaintiff and the putative class members worked at least 8 hours in a workday, and applying the average hourly

rate for a putative class members, the potential exposure as to Plaintiff and putative class members' alleged waiting time penalties is at least **$2,440,838.40** (364 employees x $27.94 hourly rate x 8 hours x 30 days).

### 3. Alleged Wage Statement Violations

43. Plaintiff alleges that he seeks to certify a subclass of employees defined as "Wage Statement Subclass," which consists of "[a]ll members of the Class who received one or more itemized wage statements during the one year preceding the filing of this Complaint." Complaint ¶ 28. Plaintiff further alleges that on behalf of Plaintiff and "each Member of the Wage Statement Subclass," Plaintiff brings a cause of action for Failure to Provide Accurate Itemized Wage Statements. *Id.* at ¶¶ 53-62.

44. Plaintiff alleges that "Defendants knowingly failed to comply with Labor Code section 226," and that "[a]s a consequence of Defendants' knowing and intentional failure to comply with Labor Code section 226(a), Plaintiff and members of the Wage Statement Subclass are entitled to actual damages or penalties not to exceed $4,000 for each employee[.]" *Id.* at ¶¶ 58, 62; *see also, e.g., Romeo v. Home Depot U.S.A., Inc.*, No. 06CV1505 IEG (BLM), 2006 U.S. Dist. LEXIS 79881, at *8 (S.D. Cal. Oct. 30, 2006) (holding that when plaintiffs seek the statutory maximum in their complaint, plaintiffs "cannot avoid satisfaction of the amount in controversy by alleging it would be 'far from reasonable to infer that a court or jury' would award the statutory maximum").

45. Labor Code section 226(e)(1) provides that "[a]n employee suffering injury as a result of a knowing and intentional failure by an employer to comply with [section 226] subdivision (a) is entitled to recover the greater of all actual damages or fifty dollars ($50) for the initial pay period in which a violation occurs and one hundred dollars ($100) per employee for each violation in a subsequent pay period, not to exceed an aggregate penalty of four thousand dollars ($4,000)." Cal. Lab. Code § 226(e)(1). Plaintiff and the putative class members' section 226 claims are subject to a one-year statute of limitations. *See* Cal. Code Civ. Proc. § 340(a). From August

Ballard Spahr LLP
2029 Century Park East, Suite 1400
Los Angeles, CA 90067-2915
Telephone: 424.204.4400

16, 2023 to present, there are/were approximately 473 current and former non-exempt employees employed by Defendant in California. Matson Decl. at ¶ 7.

46. As set forth in Plaintiff's Complaint, Plaintiff and the putative class members are seeking actual damages or penalties in the amount of $4,000 per employee (Complaint ¶ 62) and are therefore seeking the "statutory maximum." *See Romeo*, 2006 U.S. Dist. LEXIS 79881, at *8. Thus, based on Plaintiff's requested relief, an assessment of total penalties based on the statutory maximum could amount up to $1,892,000 ($4,000 x 473 employees). Matson Decl. at ¶ 7; *see also e.g.*, *Kastler*, 2019 U.S. Dist. LEXIS 185484, at *17 (finding 100% wage statement violation rate reasonable where plaintiffs alleged defendants "intentionally and willfully" failed to provide accurate wage statements and noting "[b]ecause the baseline assumptions of one hour of unpaid minimum wage and one hour of unpaid overtime per week are reasonable . . . Defendant's calculations for wage statement violations are also reasonable"); *Fong v. Regis Corp.*, No. C 13-04497 RS, 2014 U.S. Dist. LEXIS 275, 2014 WL 26996, at *6 (N.D. Cal. Jan. 2, 2014) ("[Plaintiff's] complaint contains broadly-worded averments that [defendant] systematically violated § 226. . . . Based on [plaintiff's] broad allegations, [defendant] reasonably assumes that each wage statement given to each putative class member may have violated § 226."); *Moppin v. Los Robles Reg'l Med. Ctr.*, 2015 U.S. Dist. LEXIS 129574, at *10 (C.D. Cal. Sep. 24, 2015) (finding that a 100% violation rate was justified because the plaintiff there asserted in her complaint that defendants "uniformly and systematically", "at all times", "intentionally, and willfully" failed to furnish plaintiff and the class members with accurate wage statements); *Lucas,* 2018 U.S. Dist. LEXIS 78510, at *25 (finding 100% violation rate reasonable, noting that "it is not unreasonable to assume that, with this many violations alleged by Plaintiff, every one of the wage statements issued during the one-year period could very likely have been noncompliant").

47. Accordingly, Plaintiff's contention that he and the putative class

members are entitled to the statutory maximum for Defendant's alleged failure to provide accurate wage statements puts **$1,892,000** in controversy ($4,000 x 473 employees).

### 4. Attorneys' Fees

48. In determining whether a complaint meets the amount in controversy threshold for a removal under 28 U.S.C. § 1332, a court may also consider the value of claims for attorneys' fees. *See Goldberg v. CPC Int'l, Inc.*, 678 F.2d 1365, 1367 (9th Cir. 1982) (attorney's fees may be taken into account to determine jurisdictional amount); *see also Galt G/S v. JSS Scandinavia*, 142 F.3d 1150, 1155-56 (9th Cir. 1998) (holding the amount in controversy may include attorneys' fees recoverable by statute). Attorneys' fee awards in California wage-hour class actions can easily total several hundred thousands of dollars or more. *See, e.g., McGuigan v. City of San Diego*, 183 Cal. App. 4th 610, 638 (2010) (noting attorneys' fees paid in settlement of $1.6 million); *Vasquez v. California*, 45 Cal. 4th 243, 249 (2008) (noting award of $435,000 in attorneys' fees for class claims involving failure to pay wages, liquidated damages, penalties and waiting time penalties).

49. Moreover, Courts in this circuit have held that, for purposes of calculating the amount in controversy in a wage-and-hour class action, removing defendants can reasonably assume that plaintiffs are entitled to attorney fees valued at approximately 25% of the projected damages. *See, e.g. Kastler*, 2019 U.S. Dist. LEXIS 185484, at *18 ("In the Court's experience, Plaintiff brings a typical California wage and hour case in which courts in this Circuit would likely apply the 25% benchmark rate."); *Herrera v. Carmax Auto Superstores Cal.*, LLC, No. EDCV-14-776-MWF (VBKx), 2014 U.S. Dist. LEXIS 188729, at *12 (C.D. Cal. June 12, 2014) ("Substantial authority supports a 'benchmark' 25 percent attorneys' fees figure to be added to any claim for which attorneys' fees are available."); *Hamilton v. Wal-Mart Stores, Inc.*, No. ED CV 17-01415-AB (KKx), 2017 U.S. Dist. LEXIS 162856, at *16 (C.D. Cal. Sep. 29, 2017) ("The Ninth Circuit has allowed an estimate fee award of

25% of a plaintiff's damages in calculating the amount in controversy under CAFA."); *Gutierrez v. Stericycle, Inc.*, No. LA CV15-08187 JAK (JEMx), 2017 U.S. Dist. LEXIS 20975, at *51 (C.D. Cal. Feb. 14, 2017) ("[I]t is appropriate to include in the calculation of the amount in controversy a potential fee award of 25% of the value of certain of the substantive claims.").

50. Given that Defendant can reasonably project the amount in controversy on just three of Plaintiff's ten causes of action to be at least **$4,739,644.80** ($406,806.40 + $2,440,838.40 + $1,892,000), Defendant can reasonably assume that Plaintiff's attorneys will be entitled to attorneys' fees valued at **$1,184,911.20** ($4,739,644.80 x .25).

51. Thus, for the reasons discussed above, and without conceding or admitting to the underlying merits of Plaintiff's claims, the amount in controversy on three of the ten claims set forth in Plaintiff's Complaint alone exceeds **$5,924,556.00** and surpasses the jurisdictional threshold required under CAFA. *See, e.g., Behrazfar v. UNISYS Corp.*, 687 F. Supp. 2d 999, 1004 (C.D. Cal. 2009) (When a "[d]efendant's calculation were relatively conservative, made in good faith, and based on evidence wherever possible," the court may find that the "[d]efendant has established by a preponderance of the evidence that the amount in controversy exceeds $5,000,000."). Notably, this calculation does not include Plaintiff's claims for, *inter alia*, Unlawful Wage Deductions and Violation of the Unfair Competition Law.

## VENUE IS PROPER

52. Venue lies in the United States District Court for the Southern District of California pursuant to 28 U.S.C. § 1441(a) and 1391(c) because the State action was filed in this district and Defendant is subject to personal jurisdiction in the Southern District of California.

53. WHEREFORE, Defendant removes the above-entitled action now pending in the Superior Court of the State of California for the County of San Diego to this Court.

| | |
|---|---|
| DATED: October 8, 2024 | **BALLARD SPAHR LLP** |
| | By: */s/ Nima Darouian* |
| | Nima Darouian |
| | Nalee Xiong |
| | Attorneys for Defendant |
| | CSL PLASMA INC. |

Ballard Spahr LLP
2029 Century Park East, Suite 1400
Los Angeles, CA 90067-2915
Telephone: 424.204.4400

DMFIRM #414015612 v1

17
NOTICE OF REMOVAL

# CERTIFICATE OF SERVICE

I am a resident of the State of California, over the age of eighteen years, and not a party to the within action. My business address is **BALLARD SPAHR LLP**, 2029 Century Park East, Suite 1400, Los Angeles, CA 90067-2915. On October 8, 2024, I served the within documents: **NOTICE OF REMOVAL OF ACTION TO THE UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF CALIFORNIA PURSUANT TO 28 U.S.C. §§ 1332, 1441, 1446, AND 1453**

☑ **BY MAIL:** by placing the document(s) listed above in a sealed envelope with postage thereon fully prepaid, in the United States mail at Los Angeles, California addressed as set forth below.

☐ **BY E-MAIL:** I transmitted a true copy of said document(s) by electronic mail, and no error was reported. Said electronic mail transmission(s) were directed as indicated on the service list.

☐ **BY OVERNIGHT MAIL:** by causing document(s) to be picked up by an overnight delivery service company for delivery to the addressee(s) on the next business day.

☐ **BY HAND:** I caused such document(s) to be delivered by hand to the addressee(s).

| | |
|---|---|
| Michael D. Singer<br>Rosemary Khoury<br>Amber Worden<br>COHELAN KHOURY & SINGER<br>605 C Street, Suite 200<br>San Diego, CA 92101 | Attorneys for Plaintiff Arturo Jacob<br>Tel. No.   (619) 595-3001<br>Fax No.   (619) 595-3000<br>Email:     msinger@ckslaw.com<br>              RKhoury@ckslaw.com<br>              aworden@ckslaw.com |
| Karin Backstrom<br>Backstrom Labor Law<br>3990 Old Town Ave.,<br>Suite #C-107<br>San Diego, CA 92110 | *Attorneys for Plaintiff Arturo Jacob*<br><br>Tel:    (619) 851-7274<br>Email: karin@backstromlaborlaw.com |

I am readily familiar with the firm's practice of collection and processing correspondence for mailing. Under that practice it would be deposited with the U.S. Postal Service on that same day with postage thereon fully prepaid in the ordinary course of business. I am aware that on motion of the party served, service is presumed invalid if postal cancellation date or postage meter date is more than one day after date of deposit for mailing in affidavit.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Executed on October 8, 2024, at Los Angeles, California.

_____
Cynthia A. Touchard

DMFIRM #414015612 v1

CERTIFICATE OF SERVICE