UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ARTURO JACOB, on behalf of himself and all others similarly situated and aggrieved,<br><br>Plaintiff,<br><br>v.<br><br>CSL PLASMA INC., a Delaware Corporation, and DOES 1 through 10, inclusive,<br><br>Defendant. | Case No.: 24-cv-01807-H-DEB<br><br>**ORDER DENYING PLAINTIFF'S MOTION TO REMAND**<br><br>[Doc. No. 10.] |

On August 16, 2024, Plaintiff Arturo Jacob ("Plaintiff") filed a class action complaint in the Superior Court of California, County of San Diego against Defendant CSL Plasma Inc. ("Defendant"). (Doc. No. 1-2, Compl.) On October 8, 2024, Defendant removed the action to the United States District Court for the Southern District of California pursuant to 28 U.S.C. § 1441 on the basis of jurisdiction under the Class Action Fairness Act of 2005, 28 U.S.C. § 1332(d) ("CAFA"). (Doc. No. 1, Notice of Removal ¶¶ 9–11.) On October 30, 2024, Plaintiff filed a motion to remand the action back to state court. (Doc. No. 10.) On November 25, 2024, Defendant filed a response in opposition to Plaintiff's motion to remand. (Doc. No. 13.) On December 2, 2024, the Court took the

matter under submission. (Doc. No. 14.) On December 2, 2024, Plaintiff filed a reply in support of his motion to remand. (Doc. No. 15.) For the reasons below, the Court denies Plaintiff's motion to remand.

**Background**

The following background is taken from the allegations in Plaintiff's state court complaint, the Declaration of Shandalyn Matson attached to Defendant's Notice of Removal (Doc. No. 1-3, Matson Decl.), and the Declaration of Michael Kowalski attached to Defendant's opposition to Plaintiff's motion to remand (Doc. No. 13-1, Kowalski Decl.).

Defendant is a Delaware corporation with its principal place of business located in Florida. (Compl. ¶ 14.) Defendant collects human plasma and operates collection centers throughout the United States, including in California. (Id.) Plaintiff is a resident of California and a non-exempt employee of Defendant. (Id. ¶ 13.)

From August 16, 2021 until the present, Defendant employed 704 non-exempt, hourly employees in California. (Matson Decl. ¶ 5.) At least 364 of those employees terminated their employment with Defendant. (Id. ¶ 6.) These employees were paid at an average hourly rate of $27.94. (Id.)

From August 23, 2023 until the present, Defendant employed at least 473 non-exempt, hourly employees. (Id. ¶ 7.) Defendant issued pay statements to these employees during this time frame on a bi-weekly basis, for a total of 30 pay periods. (Kowalski Decl. ¶ 4.)

From August 16, 2020 until the present, the maximum amount of paid time off that an hourly employee working in California could accrue under Defendant's paid time off policy is 200 hours. (Id. ¶ 5.)

Defendant has uniformly implemented vacation, paid time off, and paid sick leave policies applicable to its employees, including Plaintiff. (Compl. ¶ 18.) Defendant's policies cause Defendant to deduct from its employees' vacation time when they call out of work sick, instead of deducting from its employees' paid sick leave. (Id. ¶¶ 20, 22.) As

a result, Defendant has improperly deducted vested vacation wages and has issued inaccurate pay statements. (Id. ¶¶ 20–21.)

On August 16, 2024, Plaintiff filed a putative class action in the Superior Court of California, County of San Diego against Defendant, alleging causes of action for: (1) withholding wages in violation of California Labor Code §§ 221–224; (2) withholding vested vacation wages in violation of California Labor Code § 227; (3) failure to timely pay wages in violation of California Labor Code §§ 201–203; (4) failure to provide accurate itemized wage statements in violation of California Labor Code § 226; (5) violation of California's Unfair Competition Law ("UCL"), California Businesses and Professions Code §§ 17200, *et seq.*; and (6) violations of California's Private Attorneys General Act, California Labor Code § 2699. (Compl. ¶¶ 38–103.)

In the complaint, Plaintiff alleges that he is bringing the action as a class action pursuant to California Code of Civil Procedure § 382 on behalf of himself and the following proposed class: "All Defendants' California-based non-exempt employees at any time during the four years before the filing of this Complaint through the date of trial." (Compl. ¶¶ 1, 24.) Plaintiff defines several subclasses within his proposed class. (Id. ¶¶ 25–29.) Plaintiff moves to remand this action back to state court for lack of subject matter jurisdiction.

## Discussion

I. **Legal Standard**

"A defendant generally may remove a civil action if a federal district court would have original jurisdiction over the action." Allen v. Boeing Co., 784 F.3d 625, 628 (9th Cir. 2015) (citing 28 U.S.C. § 1441(a)); see Caterpillar Inc. v. Williams, 482 U.S. 386, 392 (1987). "Federal courts are courts of limited jurisdiction and, as such, cannot exercise jurisdiction without constitutional and statutory authorization." Hansen v. Grp. Health Coop., 902 F.3d 1051, 1056 (9th Cir. 2018).

"A plaintiff who contests the existence of removal jurisdiction may file a motion to remand." Leite v. Crane Co., 749 F.3d 1117, 1122 (9th Cir. 2014) (citing 28 U.S.C.

§ 1447(c)). In the motion to remand, a plaintiff "may raise either a facial attack or a factual attack on the defendant's jurisdictional allegations." Id. "A 'facial' attack accepts the truth of the [defendant]'s allegations but asserts that they 'are insufficient on their face to invoke federal jurisdiction.'" Id. at 1121. "A 'factual' attack, by contrast, contests the truth of the [defendant]'s factual allegations, usually by introducing evidence outside the pleadings." Id. When a plaintiff raises a factual attack, the defendant must support its jurisdictional allegations with "competent proof" under the same evidentiary standard that governs in the summary judgment context. Id.; accord Hertz Corp. v. Friend, 559 U.S. 77, 96-97 (2010) ("When challenged on allegations of jurisdictional facts, the parties must support their allegations by competent proof.").

Federal subject matter jurisdiction may be premised on CAFA. See generally 28 U.S.C. § 1332(d). "As a threshold matter, CAFA applies to 'class action' lawsuits where the aggregate number of members of all proposed plaintiff classes is 100 or more persons and where the primary defendants are not 'States, State officials, or other governmental entities against whom the district court may be foreclosed from ordering relief.'" Serrano v. 180 Connect, Inc., 478 F.3d 1018, 1020 (9th Cir. 2007) (quoting 28 U.S.C. § 1332(d)(5)). "If these prerequisites are met, CAFA vests federal courts with original diversity jurisdiction over a class action 'if: (1) the aggregate amount in controversy exceeds $5,000,000, and (2) any class member is a citizen of a state different from any defendant.'" Bridewell-Sledge v. Blue Cross of California, 798 F.3d 923, 928 (9th Cir. 2015) (citing 28 U.S.C. § 1332(d)(2)). "[N]o antiremoval presumption attends cases invoking CAFA, which Congress enacted to facilitate adjudication of certain class actions in federal court." Dart Cherokee Basin Operating Co. v. Owens, 135 S. Ct. 547, 554 (2014). Under CAFA, however, "the burden of establishing removal jurisdiction remains . . . on the proponent of federal jurisdiction." Abrego Abrego v. The Dow Chem. Co., 443 F.3d 676, 685 (9th Cir. 2006).

//
//

## II. Analysis

Plaintiff does not dispute that the proposed class consists of 100 or more persons or that minimal diversity exists. Rather, Plaintiff asserts that jurisdiction is lacking in this case because the amount in controversy is below the $5 million requirement. (Doc. No. 10-1 at 5.) CAFA requires that the amount in controversy exceed $5,000,000, exclusive of interest and costs. 28 U.S.C. § 1332(d)(2). "In determining the amount in controversy, courts first look to the complaint." Ibarra v. Manheim Investments, Inc., 775 F.3d 1193, 1197 (9th Cir. 2015). When "damages are unstated in a complaint . . . the defendant seeking removal bears the burden to show by a preponderance of the evidence that the aggregate amount in controversy exceeds $5 million when federal jurisdiction is challenged. Id. (citing Rodriguez v. AT&T Mobility Servs., LLC, 728 F.3d 975, 977 (9th Cir. 2013)). In proving the amount in controversy, "[t]he parties may submit evidence outside the complaint, including affidavits or declarations, or other summary-judgment-type evidence." Ibarra, 775 F.3d at 1197–98. Parties invoking CAFA jurisdiction may also bear their burden by relying on a chain of reasoning and reasonable assumptions; assumptions are reasonable if they are based on the allegations in the complaint. Arias v. Residence Inn, 936 F.3d 920, 924–927 (9th Cir. 2019). While "a defendant cannot establish removal jurisdiction by mere speculation and conjecture, with unreasonable assumptions," Ibarra, 775 F.3d at 1197, the defendant need not "research, state, and prove the plaintiff's claims for damages," Coleman v. Estes Express Lines, Inc., 730 F. Supp. 2d 1141, 1148 (C.D. Cal. 2010).

### A. Unpaid Vested Vacation Wages

Plaintiff alleges that defendant maintained a "centrally-devised," "uniformly-implemented," and "systemic illegal" policy and practice of deducting from employees' vacation time when employees called out sick, resulting in a failure to pay correct vested vacation wages upon the employees' termination in violation of California Labor Code § 227.3. (Compl. ¶¶ 4, 20–22, 44.) Plaintiff, however, does not allege an approximate amount of unpaid vacation wages at issue, even on behalf of himself.

Defendant submitted evidence that 364 of its non-exempt hourly employees who worked in California terminated their employment during Plaintiff's proposed class period, and that the average hourly pay rate for those employees was $27.64 per hour. (Matson Decl. ¶ 6.) Defendant also submitted evidence that the maximum amount of paid time off that these employees could have accrued was 200 hours each. (Kowalski Decl. ¶ 5.) Assuming a 20% violation rate, Defendant estimates that Plaintiff's unpaid vacation wages claim puts $406,806.40 into controversy in this action. (Doc. No. 1, Notice of Removal ¶ 37; Doc. No. 13 at 17.) Plaintiff argues that Defendant improperly assumes that it failed to pay vested vacation wages to all of its terminated employees during the class period. (Doc. No. 10-1 at 14.) Plaintiff also asserts that Defendant's assumption of a 20% violation rate is unreasonable because it is not supported by the complaint or by Defendant's evidence. Id.

"[D]efendant is not 'required to comb through its records to identify and calculate the exact frequency of violations." Serrieh v. Jill Acquisition LLC, 707 F. Supp. 3d 968, 974–75 (E.D. Cal. 2023). Neither is it required to "prove it actually violated the law at the assumed rate." Arias, 936 F.3d at 927. Rather, Defendant need only provide an estimate of the amount in controversy that is plausible. Id. Other district courts have found that assumed violation rates of "between 25% to 60%" are reasonable where an improper employment policy and practice has been alleged. Cavada v. Inter-Continental Hotels Grp., Inc., 2019 WL 5677846, at *4 (S.D. Cal. Nov. 1, 2019) (collecting cases). Assumptions are particularly reasonable when a plaintiff "fail[s] to offer any alternative limiting principle or rebuttal evidence." Thompson v. La Petite Academy, Inc., 2022 WL 5241838, at *5 (C.D. Cal. Oct. 6, 2022).

Here, Plaintiff's complaint alleges that Defendant's policy of deducting sick time from vacation time was "uniformly-implemented." (Compl. ¶¶ 20, 22.) It reasonably follows from Plaintiff's allegations that this policy affected all terminated employees. Further, Plaintiff's argument that its allegation that Defendant failed to pay vacation wages only "at times" is unpersuasive given the broad language Plaintiff uses to describe the

policy at issue as "centrally-devised" and "systemic." (Id. ¶¶ 22, 4); see La Petite Academy, 2022 WL 5241838, at *4 ("The Court wonders what violation rate would be reasonable for Defendants to assume given Plaintiff's allegations that Defendants had intentional policies that only resulted in violations 'at times.'")  Further, Defendant's assumed violation rate of 20% is conservative and reasonable given Plaintiff's allegations of the existence of a "uniform" and "systemic" policy of incorrectly calculating vacation wages and given Plaintiff's choice to decline to plead or otherwise suggest any alternative rate.  See Serrieh, 707 F. Supp. 3d at 975 (finding 24% violation rate of unpaid meal period premiums "on the low end of what would be acceptable"); Cavada, 2019 WL 5677846, at *4; La Petite Academy, 2022 WL 5241838, at *5.  Defendant's assumption, combined with the numbers of employees and average wage rates reflected in the two declarations submitted by Defendant, reasonably demonstrates by preponderance of the evidence that $406,806.40 is in controversy with respect to Plaintiff's unpaid vacation wages claim.

### B. Waiting Time Penalties

As above, Plaintiff alleges that Defendant's policy of deducting sick time from vacation time resulted in Defendant's failure to pay "all wages . . . due and owing" to Plaintiff and Plaintiff's proposed Waiting Time Subclass[1] upon termination of their employment, in violation of California Labor Code §§ 201-202. (Compl. ¶ 49.)  Plaintiff thus seeks waiting time penalties "to the fullest extent permissible" under California Labor Code § 203.  (Id. ¶ 52.)  California Labor Code § 203 permits a penalty equal to the employee's daily rate of pay for each day wages were withheld, up to a maximum of 30 days.  Plaintiff does not allege how many days his unpaid wages were withheld.  Neither does Plaintiff provide any indication of how many hours he or members of his proposed class worked per shift.

---

[1] Plaintiff's proposed waiting time subclass is defined as "All members of the Class whose employment ended any time during the three years preceding the filing of this Complaint." (Compl. ¶ 27.)

 Defendant assumes a 100% violation rate for the waiting time penalty and assumes that Plaintiff and each member of the Waiting Time Subclass worked 8-hour shifts. (Doc. No. 1, Notice of Removal ¶ 42.) Using these assumptions, together with its evidence that 364 employees are at issue with an average hourly pay rate of $27.94, Defendant estimates that Plaintiff's claim for waiting time penalties puts $2,440,838.40 into controversy in this action. Id.; (Doc. No. 13 at 10–11.) Plaintiff argues that Defendant improperly assumes (1) each member of the Waiting Time Subclass is entitled to a waiting time penalty; (2) each member of the Waiting Time Subclass is entitled to the maximum 30 days for the waiting time penalty; and (3) each member of the Waiting Time Subclass worked 8-hour shifts. (Doc. No. 10-1 at 15.)

 Defendant's assumptions need only have "some reasonable ground underlying them," and an assumption is reasonable when it is supported by the allegations in the complaint. Arias, 936 F.3d at 927. It is reasonable to assume an entitlement to the maximum 30-day waiting time penalty where "the vast majority . . . of the alleged violations over the [class period] at issue . . . would have happened more than 30 days before the suit was filed." Jaregui v. Roadrunner Trans. Servs. Inc., 28 F.4th 989, 994 (9th Cir. 2022). This assumption is particularly reasonable where a plaintiff fails to specify if or when Defendant did properly pay wages due at termination. See, e.g., Wheatley v. MasterBrand Cabinets, LLC, 2019 WL 688209, at *6 (C.D. Cal. Feb. 19, 2022); Watson v. San Diego Dialysis Servs., Inc., 2024 WL 4679117, at *5 (S.D. Cal. Nov. 5, 2024). Further, an assumption that class members worked 8-hour shifts is reasonable when a plaintiff fails to suggest alternatively "what proportion of Class Members did work eight-hour shifts and what number should be used instead." Herrera v. Signature Flight Support LLC, 2022 WL 4225376, at *2 (C.D. Cal. Sept. 13, 2022); see also, e.g., Wheatley, 2019 WL 688209, at *6 ("[B]ecause Plaintiff does not allege or offer evidence that some class members worked part time, it is reasonable for Defendant to assume eight-hour shifts.").

 Here, given Plaintiff's allegations that the vacation time policy at issue was "systemic" and "uniformly-implemented," it is reasonable for Defendant to assume that all

8

terminated employees would have experienced at least one incident where their vacation time was improperly reduced during the period of their employment. (Compl. ¶¶ 4, 22.); see, e.g., Loaiza v. Kinkisharyo Int'l, LLC, 2020 WL 5913282, at *10 (C.D. Cal. Oct. 6, 2020) ("Where plaintiffs have alleged 'consistent,' 'systematic,' or 'uniform' policies . . . such allegations can support a 100% violation rate."). And, given that Plaintiff's proposed class period covers alleged violations that could have occurred over the last three years, it is reasonable for Defendant to assume that each member of the Waiting Time Subclass would be entitled to the maximum 30-day penalty. See Jaregui, 28 F.4th at 994. Finally, because Plaintiff does not allege any class members worked part-time, it is reasonable for Defendant to assume that each class member worked eight-hour shifts. See Wheatley, 2019 WL 688209, at *6. Defendant thus reasonably demonstrates by preponderance of the evidence that $2,440,838.40 is in controversy with respect to Plaintiff's claim for waiting time penalties.

### C. Wage Statement Violations

As above, Plaintiff alleges that Defendant's policy of deducting sick time from vacation time resulted in Defendant's failure to provide "accurate itemized wage statements showing the correct total wages" to Plaintiff and Plaintiff's proposed Wage Statement Subclass[2] in violation of California Labor Code § 226. (Compl. ¶ 58.) California Labor Code § 226 provides for a civil penalty of $50 per employee per initial violation and $100 per employee per subsequent violation. Civil penalties under § 226 cannot exceed $4000 per employee. Plaintiff seeks penalties up to the maximum allowed under § 226. (Compl. ¶ 62.)

Defendant submitted evidence that Plaintiff's Wage Statement Subclass would consist of at least 473 persons as defined. (Matson Decl. ¶ 7.) Defendant has also

---

[2] Plaintiff's proposed wage statement subclass is defined as "All members of the Class who received one or more itemized wage statements during the one year preceding the filing of this Complaint." (Compl. ¶ 28.)

submitted evidence that it issues wage statements on a bi-weekly basis and that the maximum number of pay periods at issue for the Wage Statement Subclass is 30 pay periods. (Kowalski Decl. ¶ 4.) Assuming a 100% violation rate, Defendant estimates that Plaintiff's wage statement violation claim puts $1,395,350 into controversy in this action.[3] (Doc. No. 13 at 16.) This figure is less than what it would be assuming a statutory maximum for the alleged wage statement violations, as 41 pay period violations are required to reach the statutory maximum of $4000 in penalties.[4] Plaintiff argues that Defendant's assumption that each subclass member would be entitled to the statutory maximum for wage statement penalties is unreasonable, as Defendant has not provided evidence that class members have worked for 41 pay periods. (Doc. No. 10-1 at 16; Doc. No. 15 at 4.) Plaintiff also argues that Defendant unreasonably assumes a 100% violation rate because Plaintiff's complaint alleges that Defendant only provided inaccurate wage statements "at times." (Doc. No. 10-1 at 16.)

Here, Defendant has provided evidence that Plaintiff's Wage Statement Subclass puts 30 pay periods at issue as defined and has revised its calculations for the amount in controversy for the wage statement violation claim in accordance with that evidence. (Doc. No. 13 at 16; Kowalski Decl. ¶ 4.) Defendant's evidence and method of calculation is sufficient to meet its burden. See Byrd v. Masonite Corp., 2016 WL 2593912, at *7 (C.D. Cal. May 5, 2016) (calculating the statutory penalty for a section 226 wage statement claim assuming 100% violation rate and using pay period data from defendant's declaration). Further, Defendant's assumption of a 100% violation rate is reasonable. Given Plaintiff's allegations that Defendant's vacation time policy is "uniformly-implemented" and

---

[3] Defendant describes its formula for arriving at this figure as follows: "($50 x 473 for initial violations) + ($100 x 13,717 for subsequent violations)."

[4] Defendant argued in its Notice of Removal that Plaintiff's wage statement violation claim put $1,892,000 into controversy using the statutory maximum of $4000 x 473 employees. (Doc. No. 1, Notice of Removal ¶ 47.) Defendant revised this figure in its brief in opposition to Plaintiff's motion to remand using its evidence that only 30 pay periods were at issue as detailed in the Kowalski Declaration. (Doc No. 13 at 15–16; Kowalski Decl. ¶ 4.)

"systemic" and that Plaintiff does not allege an alternative violation rate, an assumption of a 100% violation rate is reasonable. (Compl. ¶¶ 4, 22.); Jill Acquisition LLC, 707 F. Supp. 3d at 974–75 ("[D]efendant is not 'required to comb through its records to identify and calculate the exact frequency of violations."); Fong v. Regis Corp., 2014 WL 26996, at *6 (N.D. Cal. Jan. 2, 2014) (finding assumption of 100% violation rate of wage statement claim reasonable because the "removing party cannot be expected to submit granular proof" such as "detailed information about every single putative class member's payroll history"); Byrd, 2016 WL 2593912, at *7. Defendant thus reasonably demonstrates by preponderance of the evidence that $1,395,350 is in controversy with respect to Plaintiff's claim for wage statement violations.

### D. Attorneys' Fees

Defendant includes an estimate in its notice of removal of attorneys' fees in the amount of 25% of the total amount in controversy. (Doc. No. 1, Notice of Removal ¶¶ 49-50.) Defendant includes a revised estimate of attorneys' fees in its opposition, again for 25% of the total amount in controversy, taking into account its revised estimate of the amount in controversy with respect to the wage statement violation claim. (Doc. No. 13 at 19.) Defendant determines that attorneys' fees put $1,060,748.70 into controversy in this action. Id. Plaintiff argues that Defendant's estimate of attorneys' fees are unreasonable because the "underlying assumed amounts in controversy" for plaintiff's substantive claims are not reasonable. (Doc. No. 10-1 at 17.) Plaintiff does not dispute Defendant's use of 25% as a benchmark for attorneys' fees.

Attorneys' fees are appropriately considered when determining the amount in controversy under CAFA. Fritsch v. Swift Transp. Co. of Ariz., 899 F.3d 785, 794 (9th Cir. 2018). The Ninth Circuit has not adopted "a per se rule that 'the amount of attorneys' fees in controversy in class actions is 25 percent of all other alleged recovery." Arias, 936 F.3d at 928 (quoting Fritsch, 899 F.3d at 796). District courts, however, have recognized that "the benchmark for class action attorneys' fees in the Ninth Circuit is 25%." Serrieh, 707 F. Supp. 3d at 979; see also Staton v. Boeing Co., 327 F.3d 938, 968 (9th Cir. 2003)

("This circuit has established 25% of the common fund as a benchmark award for attorney fees."). Indeed, attorneys' fee awards in excess of 25% are common. See Espinosa v. Gensis Healthcare, Inc., 2020 WL 10641865, at *4 (C.D. Cal. Mar. 31, 2020) (citing cases); see also, e.g., Loreto v. Gen. Dynamics Info. Tech., Inc., 2022 WL 3013029, at *32 (S.D. Cal. Feb. 2, 2022) (approving attorneys' fees award of approximately one third of the maximum settlement amount); Scott v. Blackstone Consulting, Inc., 2024 WL 271439, at *27 (S.D. Cal. Jan. 24, 2024) (same).

Here, the Court determines that Defendant's estimates of the amount of controversy with regard to the unpaid vacation wages, waiting time penalties, and wage statement violations are reasonable. Because Plaintiff does not challenge the use of 25% as the benchmark for attorneys' fees, and because that percentage has been recognized as reasonable within the Ninth Circuit, Defendant reasonably demonstrates by preponderance of the evidence that $1,060,748.70 is in controversy with respect to Plaintiff's claim for attorneys' fees. Adding attorneys' fees to the amounts in controversy with respect to the unpaid vacation wages, waiting time penalties, and wage statement violation claims yields a total amount in controversy of $5,303,743.50. (See Doc. No. 13 at 19.) Defendant has carried its burden of demonstrating that at least $5 million is in controversy, and thus satisfies the requirements to establish subject matter jurisdiction under CAFA.

### Conclusion

Defendant has satisfied its burden of establishing that the Court has subject matter jurisdiction over the present action under CAFA. Accordingly, the Court denies Plaintiff's motion to remand.

**IT IS SO ORDERED.**

DATED: December 6, 2024

MARILYN L. HUFF, District Judge
UNITED STATES DISTRICT COURT